IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

v.

[1] CARLOS JAVIER RUIZ-PATIÑO,
Defendant.

CRIMINAL NO. 23-85 (PAD)

TYPE C

1 2 3 4 5 6 7 8 9 10 11 12 PM
RECEIVED & FILED
CLERK'S OFFICE
NOV 03 2026
US DISTRICT COURT
SAN JUAN, PR
AM 1 2 3 4 5 6 7 8 9 10 11 12 PM

# PLEA AND FORFEITURE AGREEMENT

TO THE HONORABLE COURT:

The United States of America, Defendant, Carlos Javier Ruiz-Patino, and Defendant's counsel, Raúl S. Mariani-Franco, Esq., pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

C.R.

**1. Charges to which Defendant will Plead Guilty**

Defendant agrees to plead guilty to Counts One and Sixty of the Superseding Indictment:

Count One: Beginning on a date unknown but not later than March 2020, and continuing through approximately March 10, 2023, within the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court, the Defendant, Carlos Javier Ruiz-Patiño, knowingly and intentionally conspired and agreed with other persons known and unknown to the Grand Jury to violate 18 U.S.C. §§ 1956 and 1957, including by:

a) knowingly conducting and attempting to conduct financial transactions involving monetary instruments affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, knowing the property involved in the financial transactions represented the proceeds of some form of unlawful activity and knowing the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(l)(B)(i);

b) knowingly transporting, transmitting, and transferring, and attempting to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States knowing the monetary instrument and funds involved in the transportation, transmission, and transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer is designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(B)(i); and

C.R.

c) knowingly engaging and attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, in violation of 18 U.S.C. § 1957.

Count Sixty: Beginning on a date unknown but not later than on or about May 23, 2022, until and including on or about November 11, 2022, within the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, the Defendant, Carlos Javier Ruiz-Patiño, did knowingly and intentionally combine, conspire, confederate and agree with other diverse persons unknown to the Grand Jury, to commit an offense defined in 21 U.S.C. §§ 952(a), that is, to knowingly and

intentionally import into the United States five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance. All in violation of 21 U.S.C. §§ 952(a), 960, and 963.

**2. Maximum Penalties**

Count One: The statutory penalty for the offense charged in Count One of the Indictment is a term of imprisonment of not more than twenty (20) years, a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, pursuant to 18 U.S.C. § 1956(a)(l); and a supervised release term of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2). There is also a civil penalty of not more than the greater of the value of the property, funds, or monetary instruments involved in the transaction; or $10,000.

Count Sixty: The maximum statutory penalty for the offense charged in Count Sixty of the Indictment, is a term of imprisonment of at least ten (10) years, but not more than life; a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 of the United States Code or $10,000,000.00; and a supervised release term of at least five years, all pursuant to 21 U.S.C. § 960(b)(l)(B)(ii).

**3. Sentencing Guidelines Applicability**

Defendant understands that the sentence will be imposed by the Court in accordance with 18 U.S.C. § § 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). Further, Defendant

acknowledges that parole has been abolished, and that the imposition of Defendant's sentence may not be suspended.

**4. Special Monetary Assessment**

Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013 (a)(2)(A).

**5. Fines and Restitution**

The Court may, pursuant to Section 5E1.2 of the Guidelines order Defendant to pay a fine. The Court may also impose restitution. Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim, and comply with its obligations under the Mandatory Victim Restitution Act of 1996.

**6. Rule 11(c)(1)(C) Warnings**

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties have agreed to recommend to the Court a sentencing range between 120 months of imprisonment and the low-end of the guideline range for a level 37 when combined with the Criminal History Category determined by the Court as to Counts One and Sixty.

Defendant understands that the Court may either accept or reject this sentencing recommendation, as more specifically described below:

(a) Should the Court accept the sentencing recommendation, the Court would sentence Defendant to the agreed upon sentencing recommendation;

(b) Should the Court reject the sentencing recommendation, the Court would allow the Defendant an opportunity to withdraw Defendant's guilty plea. In this event, should Defendant not withdraw the guilty plea, then the Court could dispose of the case less favorable toward Defendant than the plea agreement contemplated. Should the Court reject the sentencing recommendation, the United States would have the right to withdraw from the plea agreement entirely.

C.R

**7. Recommended Sentencing Guidelines Calculations**

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit that the advisory Guidelines calculations listed below apply to Defendant. However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.

| **SENTENCING GUIDELINES CALCULATIONS COUNT ONE 18 U.S.C. § 1956(h)** | |
|---|---|
| Base Offense Level pursuant to U.S.S.G. § 2S1.1(a)(1) (underlying offense's offense level) | 38 |
| Conviction under s1956 pursuant to § 2S1.1(b)(2)(B) | +2 |
| **Offense Level Count 1** | **40** |
| **SENTENCING GUIDELINES CALCULATIONS COUNT SIXTY 21 U.S.C. § 952, 960, 963** | |
| 2D1.1(c)(1) Drug amount more than 450kg | 38 |
| 2D1.1(b)(3)(A) Use of aircraft | +2 |
| **Offense Level Count 60** | **40** |

| Grouping § 3D1.2 and 3D1.3 | | | | | |
|---|---|---|---|---|---|
| Counts group, use highest offense level | | | | | 40 |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | | | | | -3 |
| **Total Adjusted Offense Level** | | | | | **37** |
| 210-262 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life |

**8. Sentence Recommendation**

As to Counts One and Sixty, and after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree that the Government will request a concurrent sentence at the low end of the guideline range when combined with the Criminal History Category determined by the Court, while the Defendant will request a concurrent sentence of 120 months.

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

**9. No Stipulation as to Criminal History Category**

The parties do not stipulate as to any Criminal History Category for Defendant.

**10. Waiver of Appeal**

Defendant knowingly and voluntarily agrees that, if the sentence of imprisonment imposed by the Court is between 120 months and the low end of the guideline range for a total adjusted offense level of 37 when combined with the Criminal History Category determined by the Court, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to

the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

**11. No Further Adjustments or Departures**

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by Defendant. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

C.R.

**12. Satisfaction with Counsel**

Defendant is satisfied with counsel, Raúl S. Mariani-Franco, Esq., and asserts that counsel has rendered effective legal assistance.

**13. Rights Surrendered by Defendant Through Guilty Plea**

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:

a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause

where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

**14. Stipulation of Facts**

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

**15. Limitations of Plea Agreement**

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.

**16. Entirety of Plea Agreement**

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

**17. Amendments to Plea Agreement**

C.R.

No other promises, terms, or conditions will be entered into between the parties unless they are in writing and signed by all parties.

**18. Dismissal of Remaining Counts**

At sentencing should there be any pending counts and should the Defendant comply with the terms of this Plea Agreement, the United States will move to dismiss the remaining counts of the Indictment pending against Defendant in this case.

**19. Voluntariness of Plea Agreement**

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

**20. Breach and Waiver**

Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty plea. In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea. Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

**21. Potential Impact on Immigration Status**

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), Defendant hereby agrees and recognizes that if convicted, a Defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**22. Felony Conviction**

Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public office, and to lawfully possess a firearm.

**23. Forfeiture Provision**

Defendant agrees to waive and forgo any interests or claims over the following specific property:

a) One Cessna Model 310Q Aircraft, PT-JST, its Flight and Maintenance Logs and Manuals, together with Associated Tools and Spare Parts seized on or about November 11, 2022;

b) $139,940 in U.S. currency seized on or about June 5, 2020;

c) $179,900 in U.S. currency seized on or about September 10, 2020;

d) $1,000,130 in U.S. currency seized on or about September 30, 2020;

e) $1,009,960 in U.S. currency seized on or about March 7, 2022; and

f) $102,461 in U.S. currency seized on or about October 19, 2022.

In addition, Defendant agrees to waive and forgo any interests or claims over any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violation, pursuant to 21 U.S.C. §§ 853 and 970.

Defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

Defendant acknowledges that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise Defendant of this, pursuant to Rule 11(b)(1)(J), at the time Defendant's guilty plea is accepted.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, giving rise to forfeiture and/or substitute assets for property otherwise subject to forfeiture.

C.R.

[*Intentionally Left Blank*]

Defendant, by agreeing to the forfeiture stated above, acknowledges that such forfeiture is not grossly disproportionate to the gravity of the offense conduct to which Defendant is pleading guilty. Defendant agrees that the forfeiture provisions of this Plea Agreement are intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assignees until the agreed forfeiture, including any agreed money judgment, is collected in full.

Héctor E. Ramírez-Carbó
Acting United States Attorney

María L. Montañez-Concepción
Assistant U.S. Attorney, Chief
Transnational Organized Crime
Dated: 10.20.2026

Raúl S. Mariani-Franco, Esq.
Counsel for Defendant
Dated: 10-28-26

Lani Lear
Assistant U.S. Attorney
Transnational Organized Crime
Dated: 10-20-2026

Carlos Javier Ruiz-Patiño
Defendant

Dated: 10-28-26

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: 10-28-26

Carlos Ruiz P.

Carlos Javier Ruiz-Patiño
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: 10-28-26

Raúl S. Mariani-Franco, Esq.
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the Defendant Carlos Javier Ruiz-Patiño admits that Defendant is guilty as charged in the Indictment and admits the following:

Beginning on a date unknown but not later than March 2020, and continuing through approximately March 10, 2023, within the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court, the Defendant, Carlos Javier Ruiz-Patiño, knowingly and intentionally conspired and agreed with other persons known and unknown to the Grand Jury to violate 18 U.S.C. §§ 1956 and 1957, including by:

a) knowingly conducting and attempting to conduct financial transactions involving monetary instruments affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, knowing the property involved in the financial transactions represented the proceeds of some form of unlawful activity and knowing the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(l)(B)(i);

b) knowingly transporting, transmitting, and transferring, and attempting to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States knowing the monetary instrument and funds involved in the transportation, transmission, and transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer is designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(B)(i); and

c) knowingly engaging and attempting to engage in a monetary transaction in criminally derived property of a value greater than

$10,000 and is derived from specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances, in violation of 18 U.S.C. § 1957.

<u>Object of the Conspiracy</u>

The object of the conspiracy was to realize personal gain by using the U.S. financial system to conceal proceeds from the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in controlled substances, and transfer those illicit proceeds from places within the United States, including the District of Puerto Rico, to other places within the United States and places outside the United States, including the Republic of Colombia. The object of the conspiracy involved violations of 18 U.S.C. §§ 1956 and 1957.

<u>Manner and Means of the Conspiracy</u>

It was part of the manner and means of the conspiracy that:

- The sale of controlled substances in Puerto Rico and elsewhere generated illicit proceeds in the form of U.S. currency.
- The illicit proceeds would be bundled and packaged using various methods, including plastic wrap, to conceal the odor of narcotics emanating from the currency and to facilitate its transportation.
- The illicit proceeds would be further concealed in luggage and other containers for ultimate transport, delivery, and transfer.
- Members of the conspiracy used encrypted messaging applications to communicate in furtherance of the conspiracy.

- "Money brokers," who generally operated from Colombia, solicited what are referred to as "money contracts" from the owners of illicit proceeds generated from the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in controlled substances in Puerto Rico and elsewhere in the United States.
- The money brokers arranged for illicit proceeds in the form of bulk U.S. currency to be picked up from couriers in Puerto Rico and elsewhere and then moved by wire transfer through U.S. financial institutions to bank accounts designated by the money broker. Couriers met in public locations and carried the money in a concealed manner. In addition to domestic and international wire transfers, the money brokers requested corresponding bulk-cash deliveries of the illicit proceeds in Colombia.
- When the bulk currency was transferred between couriers, each courier was required to have the same secret code phrase to assure each other that they were meeting the right party.
- Couriers also carried the same serial number of a U.S. dollar bill, known as a "token," to ensure that when the bulk currency was being transferred between the couriers they would know they were meeting the right party.
- Couriers met in public locations and carried the money in a concealed manner, such as in duffel bags. When the deliveries were complete, the

C.R.

courier was expected to obtain proof, which usually was a photograph of the token.

- Conspirators received commissions for their roles in the scheme. The commissions generally reflected a percentage of the illicit proceeds laundered.

All in violation of 18 U.S.C. § 1956(h).

In addition, beginning on a date unknown but not later than on or about May 23, 2022, until and including on or about November 11, 2022, within the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, the Defendant, Carlos Javier Ruiz-Patiño, did knowingly and intentionally combine, conspire, confederate and agree with other diverse persons unknown to the Grand Jury, to commit an offense defined in 21 U.S.C. §§ 952(a), that is, to knowingly and intentionally import into the United States five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance. All in violation of 21 U.S.C. §§ 952(a), 960, and 963.

Specifically, between approximately March 2020 and March 2023, Mr. Ruiz-Patiño brokered money pickups for the purposes of laundering cash that was associated with narcotics transactions. After the cash pickups, Mr. Ruiz-Patiño would send the cash recipient instructions regarding where they should wire the money.

On April 15, 2021, Mr. Ruiz-Patiño delivered approximately 4 kilograms of cocaine to an undercover agent in Bogota, Colombia to be transported to Puerto Rico.

On December 2, 2021, law enforcement seized approximately 10 kilograms of cocaine in St. Thomas, U.S. Virgin Islands that was intended to go to Puerto Rico. Mr. Ruiz-Patiño confirmed that the seized narcotics were his in a meeting with undercover agents on April 20, 2022.

Between approximately May and November of 2022, Defendant and others coordinated an aircraft drug load. The parties discussed a flight from a clandestine airstrip in Venezuela to a small regional airport in Puerto Rico. The parties discussed payment and the process of refueling the aircraft after it landed in Puerto Rico and offloaded the cocaine. On November 10, 2022, undercover agents who had infiltrated the DTO were informed that "la guerrilla" was going to authorize the flight from Venezuela.

C.R.

On November 11, 2022, at about 4:25 p.m., U.S. authorities detected a Cessna Model 310Q Aircraft about 90 nautical miles south of Humacao. It was loaded with 13 bales and 3 bundles of what the Drug Enforcement Administration drug laboratory later determined to be approximately 450.2 kilograms of cocaine. The DEA lab noted that its measurement had a margin of error of +/- .3 kilograms.

The aircraft landed in Humacao at approximately 5:20 p.m. Law enforcement immediately seized the aircraft and its occupants. The aircraft was outfitted with equipment which allowed the pilots to assist in fueling the aircraft during flight and six fuel containers were recovered from the aircraft.

In total, between approximately May 2020 to November 2022, Mr. Ruiz-Patiño conspired to launder more than $7 million dollars associated with narcotics trafficking

and conspired to possess with intent to distribute approximately 464 kilograms of cocaine.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence and documentary evidence, which would have proven beyond a reasonable doubt that Defendant Carlos Ruiz-Patiño is guilty as charged in Counts One and Sixty of the Indictment. Discovery was timely made available to Defendant for review.

Lani Lear
Assistant U.S. Attorney
Dated: 10-20-2026

Raúl S. Mariani-Franco, Esq.
Counsel for Defendant
Dated: 10-28-26

Carlos Javier Ruiz-Patiño
Defendant
Dated: 10-28-26